

# COZEN
# O'CONNOR

A PROFESSIONAL CORPORATION

16TH FLOOR   45 BROADWAY   NEW YORK, NY 10006-3792   212.509.9400   800.437.7040   212.509.9492 FAX   www.cozen.com

June 22, 2012

**BY HAND AND ECF**

J. Bruce Maffeo
E. Niki Warin
Direct Phone (212) 883-4969
jbmaffeo@cozen.com
nwarin@cozen.com

Hon. Carol Bagley Amon
Chief Judge
United States District Court for the Eastern
District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   GEICO v. Soltanov, et al., 12 Civ. 1953 (CBA)

Dear Judge Amon:

    We represent Paul Soltanov, one of the two individual defendants in the above-referenced matter and write pursuant to the Court's individual rules to respectfully request a pre-motion conference with the Court in connection with our proposed submission of a motion to dismiss the civil RICO causes of action in the instant Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6). In addition, we request permission to join in the proposed motions to dismiss of our co-defendants on other grounds where applicable.

    In the instant case, plaintiffs attempt to plead a claim of civil RICO against Dr. Zenaida Reyes-Arguelles and Paul Soltanov. *See* Complaint at ¶¶ 104-117 (Second and Third Causes of Action).[1] Stripped to its essential terms, the complaint alleges that two professional medical corporations known as Vincent P.C. and Arguelles P.C., notwithstanding their respective certificates of incorporation and biennial reporting statements, were actually "secretly" controlled by Soltanov, a non-physician, in violation of New York State no-fault insurance laws. (Compl. ¶¶ 21-29; 35-36.) The primary support for these allegations consists of selective and paraphrased excerpts from a deposition conducted of Dr. Arguelles in an unrelated action in which she purportedly was unable to recall the details of the daily operations of the professional corporations. (Compl. ¶¶ 41, 58.) The balance of the support is found in either unremarkable or conclusory statements that Soltanov: (i) was compensated for performing services such as marketing, billing, collections and management of the corporations, including providing the space and equipment for the same, and (ii) "control[led]" their "day-to-day operations." (*Id.* ¶¶

---

[1] Over the last two years alone, GEICO has filed numerous civil RICO cases in this District against small medical professional corporations; at last count on PACER the total was twenty four (24.)

NEWYORK_DOWNTOWN\2470586\1

43-44, 60-61.)[2]  Finally, although the complaint begrudgingly concedes that Dr. Arguelles conducted "basic medical examinations," it goes on to complain that additional medical services were provided not by employees of the corporations, as purportedly required under state law, but rather by physicians and other medical specialists treated as independent contractors, thus avoiding various required taxes and insurance costs and rendering those services ineligible for reimbursement by GEICO. (*Id.* ¶¶ 76-82.)

The complaint thus attempts to jury rig a conventional claim of insurance fraud, routinely raised as a defense by insurance companies in state court collection actions, into a civil RICO claim premised solely on mail fraud, a conversion that flies in the face of accepted precedent designed specifically to weed out just this kind of "garden variety" fraud claim.[3]  As the Court is aware, in order to survive a motion to dismiss, a civil RICO claim must show, *inter alia*, a pattern of racketeering activity where the predicate acts must "amount to or pose a threat of continued criminal activity," either open or closed-ended. *De Falco v. Bernas,*, 244 F.3d 286, (2d Cir. 2001).

Here, plaintiffs' action purports to rest upon a pattern of racketeering activity consisting of "repeated violations of the federal mail fraud statue" based on the submission of "hundreds of fraudulent bills" on a continuous basis for periods between three and a half and five years seeking payments that neither corporation was eligible to receive under state no-fault laws. *See* Compl. ¶¶ 106, 133.[4]  Courts, including at least one in this district, have expressed skepticism over civil RICO claims based solely on repeated instances of precisely the same type of mail fraud. *E.g. ACME American Repairs, Inc., v. Katzenberg,* 03 Civ. 4740 (RRM), 2010 U.S. Dist. LEXIS 100803, at *22-23 (E.D.N.Y. Sept. 24, 2010)(Mauskopf, J.)("virtually every ordinary fraud is carried out in some form by means of mail or wire communications;" "even a multiplicity of mailings may not satisfy the requisite continuity to establish a pattern of racketeering activity").

Indeed, even when comparing alleged civil RICO claims based on repetitious mailings, the allegations of "hundreds" of bills" over the time frames alleged here is unremarkable either by duration or volume. *Compare GEICO v. Hollis Medical Care,* 10 Civ. 4341 (ILG), 2011 U.S. Dist. LEXIS 130721 (E.D.N.Y. Nov. 9, 2011)(finding closed-ended continuity based on 46,000

---

[2] The complaint also alleges that Soltanov improperly used monies from the corporations to pay his own personal expenses, such as credit card, mortgage and car payments, *(id.*¶¶ 46, 63) although these claims, even if credited, do not establish that Soltanov "secretly" controlled the corporation.

[3] The complaint states, without any factual support, that this "secret" ownership by Soltanov "compromises patient care" because the "provision of health service" has been subject to the "pecuniary interests of a non-physician as opposed to the independent medical judgment of a true doctor-owner." *See* Compl. ¶ 72. Again, the complaint is devoid of any factual allegations to suggest that the medical examinations, admitted to have been provided by Dr. Arguelles, or the subsequent medical assistance, again admitted to have been provided by other medical professionals, were directed by Soltanov, much less driven by his desire for profit. Similarly, despite the conclusory statements that Soltanov was paid "exorbitantly" for these services and that he "siphoned off the profits" to pay for his "lavish personal lifestyle expenses," (*id.* ¶¶ 46, 63), there are no factual allegations to suggest that services were not in fact rendered to by Soltanov or that these payments were not for the services in question.

[4] This purported ineligibility also rests upon the conclusory assertions of "unlawful incorporation" and "secret" control by a non-physician, fee-splitting with a non-physician, and billing for work done by independent contractors, again assertions without any factual foundation in the complaint. Compl. ¶ 106.

fraudulent claims over six years). Furthermore, unlike most of the other civil RICO cases filed in this district by insurance companies, notably GEICO, there are no allegations in this complaint of any racketeering activity beyond mail fraud, much less any facts to support the allegation that the bills submitted here were "fraudulent" beyond GEICO's contention that the corporations were not actually owned by Dr. Arguelles and some services may have been provided by independent contractors. *Compare Hollis Medical Care*, U.S. Dist. LEXIS at *14 (alleging nominal ownership *and* kickbacks from medical device suppliers and psychiatrists referred without regard to need); *State Farm v. CPT Medical Services*, 375 F. Supp. 2d 141 (E.D.N.Y. 2005)(also alleging billing for tests with no medical value); *Allstate v. Halima*, 2009 WL 750199 (E.D.N.Y. Mar. 19, 2005)(billing for tests with no medical value and incorrect billing codes to disguise the same); *Allstate Insurance v. Valley Physical,* 05 Civ. 5934 (DRH), 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. Sept. 30, 2009)(bills submitted for medically unnecessary or useless services). Where, as here, there is a total uniformity in the alleged predicate acts, the alleged scheme is discrete and narrowly focused against GEICO, and only two people are alleged to be participants, closed-ended continuity has not been shown.

In a weak effort to make out a pattern of racketeering through open-ended continuity, GEICO asserts that Vincent P.C. and Arguelles P.C. were engaged in "inherently unlawful acts" and that its predicate acts of mail fraud constitute a "regular way of doing business" that poses a threat of continuing criminal activity. *See* Compl. ¶¶ 107-108; 133-34. Notwithstanding GEICO's conclusory characterization, the complaint describes at most the provision of medical services to patients and the submission of bills for reimbursement for these services to the insurance company, which, even if contested by the insurance company, simply do not rise to the level of criminality where open-ended continuity is assumed. *Compare United States v. Aucilino,* 44 F.3d 1102, 1111 (2d Cir. 1995)(presuming the threat of continued criminal activity '[w]here the acts of the defendant or enterprise were inherently unlawful, *such as murder or obstruction of justice,* and were in pursuit of inherently unlawful goals, *such as narcotics trafficking or embezzlement"*) (emphasis added). Indeed, to ascribe every claim of fraud that relied upon billing to accomplish its ends as "inherently unlawful" casts far too wide a net: a "conventional corporate swindle is not intended to fall within the ambit of the federal RICO statute." *Ritter v. Klisivitch*, 06 Civ. 5511, 2008 U.S. Dist. LEXIS 58818, at *11 (E.D.N.Y. July 30, 2008).

Conclusion

As summarized above, Soltanov asserts that the complaint fails to meet the minimum pleading standard of a civil RICO claim and respectfully requests permission to file a motion to dismiss under Federal Rule of Civ. Proc. 12(b)(6) on those grounds. Further, we respectfully request permission to, where applicable, join in the arguments raised in the letter submitted by counsel for the co-defendants.

Sincerely,

COZEN O'CONNOR

By: J. Bruce Maffeo  (cc: All Counsel (by ECF))

NEWYORK_DOWNTOWN\2470586\1